# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DESTINY HEALTH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-889 |
| ) | |
| CONNECTICUT GENERAL LIFE ) | Judge Robert M. Dow, Jr. |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Destiny Health Inc. ("Destiny") moves this Court for leave to file a first amended complaint [8] adding CIGNA Corporation as a defendant and for an order remanding the above-captioned matter to the Circuit Court of Cook County, Illinois, based on lack of diversity jurisdiction. Defendant Connecticut General Life Insurance Company ("CGLIC") opposes the motion. For the following reasons, the Court grants Destiny's motion for leave to file an amended complaint [8]. The Court gives Destiny fourteen days from the date of this order to file an amended complaint that incorporates the additional allegations set forth in its briefs. Defendant's motion for leave to file a surreply [17] is denied, as Defendant's sixteen-page response brief thoroughly addresses all of the issues that the Court considered in ruling on this motion and the Court has sufficient facts and authority to render a decision on this issue.

**I.      Background**

On April 7, 2009, Destiny filed the instant lawsuit in the Circuit Court of Cook County against Defendant Connecticut General Life Insurance Company, alleging misappropriation of trade secrets. In its original complaint, Destiny named only CGLIC, although it referred to CGLIC as "CIGNA" throughout the complaint. Destiny now requests leave to file an amended

complaint, which essentially states the same allegations but now states them against both CGLIC and CIGNA Corporation.

In its original complaint, Destiny alleged that, in 2007, CGLIC and Destiny discussed the possibility of entering into a business relationship to enable CGLIC to implement a wellness-based incentive program for its customers. Compl. at ¶ 5. As the business discussions progressed, CGLIC acquired Destiny's proprietary trade secret information concerning aspects of Destiny's wellness-based healthcare program, pursuant to the terms of a Confidentiality Agreement. *Id.* at ¶ 6, 7, 12, 13. After detailed evaluation of Destiny's propriety information, CGLIC told Destiny that CGLIC could not move forward on the project due to "system challenges. *Id.* at ¶ 9. Then, on January 8, 2009, CGLIC announced the launch of a wellness-based incentive health insurance program, known as the "CIGNA Incentive Points Program," allegedly incorporating many of Destiny's proprietary trade secrets, without Destiny's consent. *Id.* at ¶ 9, 10, 13.

On August 20, 2009, Destiny served its first set of requests for the production of documents and things to CGLIC, specifically requesting "[d]ocuments and things sufficient to show CIGNA's past and present organizational structure for the past five years."[1] CGLIC initially objected and refused to produce documents responsive to this request.[2] On November 6, 2009, CGLIC filed its answer to Destiny's complaint. On February 9, 2010, CGLIC filed a Notice of Removal pursuant to 1441(a) asserting that this Court has subject matter jurisdiction

---

[1] Throughout Destiny's first set of requests, CIGNA is identified as "Connecticut General Life Insurance Company." However, CIGNA also is defined as "all affiliates" of Connecticut General Life Insurance Company. In any event, it is clear that since early in this litigation Destiny has been seeking information related to the corporate structure of CIGNA and CGLIC.

[2] After CGLIC filed the Notice of Removal in this matter, CGLIC agreed to produce documents related to this request.

2

over the lawsuit because Destiny alleged damages in excess of $75,000 and there is complete diversity between Destiny and CGLIC.

After receipt of the Notice of Removal, counsel for Destiny continued to request information from CGLIC in an effort to determine whether removal was proper as well as whether the correct CIGNA entities were parties to this litigation. On February 10, 18, 24, and March 1, 2010, counsel for Destiny corresponded with counsel for CGLIC seeking information regarding whether the proposed new defendant CIGNA Corporation was responsible for any acts alleged to constitute misappropriation of Destiny's trade secrets. Specifically, Destiny requested: (1) identification of which corporate entity employed the individuals identified in CGLIC's response to Interrogatory No. 1 in September of 2007; (2) identification of which corporate entity actually launched CIGNA's Incentive Points Program in January 2009; and (3) production of documents related to CIGNA's corporate structure.

Based on the information provided by CGLIC in response to Destiny's inquiries as well as the documents produced to date by CGLIC, Destiny contends that another CIGNA entity – CIGNA Corporation – also was intimately and directly involved in the misappropriation of Destiny's trade secrets. In particular, CIGNA Corporation allegedly employed two individuals who were integrally involved in engineering the business discussions with Destiny, namely Richard Gray and Thomas McCarthy. According to Destiny, these two individuals were Destiny's principal contacts at CIGNA for the business relationship; they traveled to Chicago and interacted closely with Destiny's employees regarding the evaluation of Destiny's proprietary trade secret information; and they led Destiny to believe that CIGNA intended to go forward with a business relationship with Destiny. Destiny contends that CINGA employees

3

Gray and McCarthy held themselves out as the decision-makers or "deal team" with respect to the business relationship between CGLIC and Destiny.

Defendant CGLIC contends that it, not CIGNA, developed, launched, and administers the incentive points program and was the entity that entered into the confidentiality agreement with Destiny. CGLIC further maintains that CIGNA Corp. is a holding company that exists to own stock in other companies, that issues its own stock to the public, and that indirectly owns the stock of CGLIC, a "third-tier" subsidiary. According to Defendant's response, CIGNA is not an insurance company and does not promote, offer, sell, or administer any products or services, including insurance. Defendant concedes that CIGNA's officers and employees provide services for its various subsidiaries; however, Defendant maintains that the expenses of any services that CIGNA provides for its indirect subsidiaries are charged back to the subsidiaries. CGLIC confirms that Gray and McCarthy are employees of CIGNA and that each provided services in connection with the incentive points program, but maintains that their services were solely on behalf of CGLIC and the costs associated with their time were charged back to CGLIC.

## II. Analysis

When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to federal court. See 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993). CGLIC properly removed this action to the Northern District of Illinois based on diversity jurisdiction on February 9, 2010, because CGLIC is a citizen of Connecticut. Approximately one month after CGLIC removed, Destiny filed the instant motion to amend,

4

seeking to join CIGNA, CGLIC's parent company and a citizen (for diversity purposes) of Delaware. Plaintiff also is a citizen of Delaware.

When joinder of a nondiverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies[3]: "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Thus, the Court has two options: (1) deny joinder, or (2) permit joinder and remand the action to state court. See *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 759 (7th Cir. 2009); see also *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1486 (7th Cir. 1996). These are the only options; a court may not permit joinder of a nondiverse defendant *and* retain jurisdiction. See *Schur*, 577 F.3d at 579.

In evaluating the propriety of the joinder of a non-diverse party after removal, the United States Court of Appeals for the Seventh Circuit has instructed courts to consider: (1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations. See *Schur*, 577 F.3d at 759; *Perez v. Arcobaleno Pasta Machs., Inc.,* 261 F. Supp. 2d 997, 1001 (N.D. Ill. 2003); *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.,* 199 F.R.D. 304, 307 n.2 (S.D. Ind. 2001). "The decision to permit joinder of diversity-defeating parties is discretionary and guided essentially by equitable considerations." *Brown v. Alter Barge Line, Inc.,* 461 F. Supp. 2d 781, 784 (S.D. Ill. 2006).

---

[3] This is in contrast to an ordinary pretrial amendment under Rule 15(a), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

5

In order to permit joinder of a diversity-defeating party after removal, it is not necessary that the non-diverse party be one that is indispensable to just adjudication of a lawsuit within the meaning of Rule 19 of the Federal Rules of Civil Procedure. See *Goutanis v. Mutual Group (US),* 1995 WL 86588, at *6 (N.D. Ill. Feb. 24, 1995); *Vasilakos v. Corometrics Med. Sys., Inc.,* 1993 WL 390283, at *2 (N.D. Ill. Sept. 30, 1993). In evaluating fraudulent joinder to defeat diversity, a court does not inquire into a plaintiff's motive for joining a diversity-defeating party. See *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992). Conversely, one of the factors in evaluating a post-removal attempt to join a non-diverse party – the scenario present in this case – is whether a plaintiff's motive for joining such a party is to defeat federal jurisdiction. See *In re Bridgestone/Firestone, Inc., ATX, ATX II,* 129 F. Supp. 2d 1202, 1205 (S.D. Ind. 2001) (plaintiff's failure to provide an explanation as to why she sought to join a non-diverse defendant after removal raised a strong inference of a motivation to defeat diversity jurisdiction); see also *McCaulley v. Purdue Pharma, L.P.,* 172 F. Supp. 2d 803, 807 (W.D. Va. 2001) ("[I]n a proper § 1447(e) analysis, the first question to resolve is whether the new party is sought for the purpose of defeating diversity jurisdiction.").

**A.  Motive**

Where removal is permissible, a defendant possesses an important statutory right to transfer the case to a federal forum. A plaintiff cannot defeat that right because it would rather litigate in state court. See *Kortum v. Raffles Holdings, Ltd*., 2003 WL 31455994, at *3 (N.D. Ill. Oct. 30, 2002). It follows that a plaintiff cannot seek to join a non-diverse party solely to defeat federal jurisdiction. In the present case, Defendant contends that Destiny's motivation for adding CIGNA as a defendant is to defeat federal jurisdiction.

In assessing Plaintiff's motive, the Court must look to Illinois state law and consider whether there is "any reasonable possibility" that Plaintiff could prevail against CIGNA. *Schur*, 577 F.3d at 764. Destiny claims that it seeks to add CIGNA in this action because CIGNA may be directly liable to Destiny if the allegations of the proposed amended complaint prove to be true. Further, Destiny asserts that it filed its motion as soon it received confirmation that the "deal-team" of Gray and McCarthy in fact was employed by CIGNA and not CGLIC. Destiny also contends that documents produced during the course of discovery reveal that CGLIC was acting on behalf of CIGNA. CIGNA argues that the "relationship of CGLIC as a third-tier subsidiary of [CIGNA] does not provide a basis for a claim against CIGNA * * *." Def. Resp. at 12 n.5. However, Destiny does not contend that CGLIC's relationship as subsidiary of CIGNA alone creates liability for CIGNA. Instead, Destiny maintains that CIGNA's involvement in authorizing and directing the negotiations with Destiny, which led to the alleged misappropriation, provides a basis for Destiny's claim against CIGNA Corp.

As a general principle, a parent corporation is not liable for the acts of its subsidiaries. However, under the direct participant theory of liability, a parent corporation may be held liable if "there is sufficient evidence to show that the parent corporation directed or authorized the manner in which an activity is undertaken." *Forsythe v. Clark USA, Inc*., 864 N.E.2d 227 (Ill. 2007) (holding that "[t]he key elements to the application of direct participant liability, then, are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability"); *Santora v. Starwood Hotel & Resorts Worldwide, Inc*., 2007 WL 3037098, at *6 (N.D. Ill. Oct. 16, 2007) (noting that "where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy and carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of

7

ownership in disregard for the interests of the subsidiary, the parent company could face liability") (internal quotations omitted). When a corporation specifically directs an activity where injury is foreseeable, or if it mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, the corporation can be liable for foreseeable injuries. *Cima v. Wellpoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 905-06 (S.D. Ill. 2008). Furthermore, the Seventh Circuit has observed that "a parent corporation may be held liable for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions." *Esmark, Inc. v. NLRB*, 887 F.2d 739, 757 (7th Cir. 1989) (noting "direct intervention or intermeddling by the parent in the affairs of the subsidiary and more particularly in the transaction involved, to the disregard of the normal and orderly procedure of corporate control carried out through the election of the desired directors and officers of the subsidiary and the handling by them of the direction of its affairs, seems to have been determinative in some cases to holding the parent liable") (internal citations omitted). Under this "transaction-specific" theory of direct participation, parent companies have been held liable for a wide variety of misconduct by subsidiaries: parent or copyright infringement, false advertising, fraud, conversion, and the creation of a nuisance. *Id*.

Here, Destiny alleges that CIGNA directly participated in the misappropriation of Destiny's trade secrets. Destiny further alleges that CIGNA employees specifically directed the negotiations with Destiny and that the two lead negotiators of the deal with Destiny were CIGNA employees who led Destiny to believe that CGLIC intended to go forward with a business relationship with Destiny. Destiny alleges that Gray and McCarthy traveled to Chicago, sent numerous communications to Destiny, and engaged in strategic business discussions regarding a partnership between CIGNA and Destiny. Destiny also alleges that Gray and

8

McCarthy effectively authorized CIGNA's dealings with Destiny and also participated in reviewing and analyzing Destiny's proprietary information. Finally, Destiny alleges that it was CIGNA employee Gray who informed Destiny that CIGNA could not move forward with a relationship with Destiny.

To Defendant's point, it certainly is true that Destiny filed its original complaint in April 2009, naming only CGLIC, a diverse defendant, and not CIGNA. It also may be true that Destiny had suspicions about CIGNA's involvement from early in the case and could have amended its complaint prior to removal. However, the record also indicates that Destiny promptly sought discovery from CGLIC on issues related to CIGNA's possible involvement in this case. For instance, in its first set of requests for the production of documents, Destiny specifically requested "documents and things sufficient to show CIGNA's past and present organizational structure for the past five years" and also asked CGLIC to "identify" the employer of each individual involved in dealings with Destiny. CGLIC objected and refused to produce documents responsive to this request until after it removed the case to federal court. As soon as Defendant confirmed what Destiny suspected – that two employees key to this transaction were employed by CIGNA – Destiny moved to amend the complaint to add another potentially liable party as a defendant.

Furthermore, both sides accuse the other of playing "hide the ball" in regard to discovery that would aid the other side in its efforts to proceed in its preferred forum. Plaintiff delayed in confirming the amount in controversy, while CGLIC delayed in providing information related to the corporate structure of the entities at issue as well as information about which entity employed McCarthy and Gray. Motive is just one factor among many to consider and is not dispositive of whether joinder is improper. Therefore, even assuming some jurisdiction-related motive on the

part of Destiny, CGLIC appears to have engaged in similar strategic behavior. The fact that both sides have been dilatory in responding to the opposing sides' requests for information and apparently jockeying over the forum makes this factor largely a wash. See *Schur*, 577 F.3d at 763-64 ("fraudulent joinder doctrine is not *dispositive* of whether joinder is improper; it is simply another tool in the district judge's belt for scrutinizing the plaintiff's motive for joining a nondiverse party") (emphasis in original); see also *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999) (determining that "the fraudulent joinder doctrine can be yet another element of the district court's 'flexible, broad discretionary approach' to resolving a post removal question of whether a nondiverse defendant should be joined under Section 1447(e)").

Resolving questions of fact and law in favor of Plaintiff, as the Court must do, the Court finds that Destiny, at least in its briefs,[4] has stated a valid claim against CIGNA. See, *e.g.*, *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 961 (S.D. Ind. 1999) ("the standard applied to [plaintiff's] state law claims against [defendant] is essentially as generous as the one the court would apply if a defendant moved to dismiss a case for lack of federal question subject matter jurisdiction on the theory that the only claim arising under federal law was 'wholly insubstantial and frivolous.'"). Based on the allegations, there at least is a question regarding the entity on whose behalf Gray and McCarthy were acting. Future developments may demonstrate that all of the potential liability can be attributed to CGLIC, but as this early stage, the allegations set forth by Destiny that relate to McCarthy's and Gray's employment, actions, and representations during

---

[4] Destiny's briefs contain substantially more detail than its amended complaint. In ruling on a motion to dismiss – and, by close analogy, in assessing arguments aimed at defeating a motion for leave to file an amended complaint – the Court may consider "facts asserted in the memorandum filed in opposition to the motion to dismiss, but not contained in the complaint, [that] are relevant to the extent that they could be proved consistent with the allegations." *Evans v. U.S. Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006) (quoting *Dausch v. Ryske*, 52 F.3d 1425, 1428 n.3 (7th Cir. 1994)). Thus, the Court has considered the facts presented in Plaintiff's briefs to the extent that those facts are consistent with the allegations in the complaint.

the negotiations with Destiny leave the Court unable to conclude that no "reasonable possibility" of success against CIGNA exists. *Id*. at 766.

### B. Timeliness

Destiny's motion to amend was filed approximately one month after removal of the action to federal court. Additionally, on February 10, 2010, just one day after removal, counsel for Destiny corresponded with counsel for CGLIC, seeking information regarding whether CIGNA was responsible for any acts alleged to constitute misappropriation. Counsel followed up with letters on February 18 and 24 and again on March 1. CGLIC confirmed that Gray and McCarthy were employees of CIGNA on March 4, 2010, and Destiny filed its motion to amend just eight days later. Furthermore, as early as August 2009, Destiny requested information from CGLIC related to the corporate structure of CGLIC and CIGNA and as to the identity of those individuals involved in dealings with Destiny. Defendant did not product the requested information until February 23, 2010, and March 4, 2010, only after the case had been removed to federal court.

As Defendant points out, there are indications that Plaintiff had information concerning CIGNA's involvement as early as 2007, which creates some suspicion of strategic behavior or forum shopping. However, it is equally plausible that the discovery served in August 2009 concerning CIGNA, and the following correspondence between counsel, was an effort to confirm what Plaintiff had reason to believe was true (accepting Plaintiff's version of the facts) – namely, that CIGNA has some involvement in the events giving rise to this lawsuit. In fact, just as CGLIC contends that Destiny contributed to the delay by CGLIC in removing this action, Destiny contends that CGLIC contributed to the delay in Destiny's request to add CIGNA by not providing timely discovery responses. Accepting this scenario, Plaintiff's filing of a motion to

11

amend within ten days of receiving discovery responses on this issue was timely. Given the nature of the amendment, which is based on evidence that Destiny received in late February and March 2010, the Court finds that Destiny did not delay in seeking leave to amend.[5] See also *Fuentes v. Ecolab, Inc.*, 2007 WL 772924, at *3 (N.D. Ill. Mar. 7, 2007). Therefore, the Court concludes that Destiny acted promptly in seeking to amend its complaint in a timely fashion and that CGLIC has not been prejudiced by any delay. See, *e.g.*, *Kortum v. Raffles Holdings, Ltd.*, 2003 WL 31455994, at *2 (N.D. Ill. Oct. 30, 2002) (finding delay of eleven days between plaintiff learning of defendant's position in a deposition and seeking leave to amend complaint to add additional non-diverse parties was not dilatory); *County of Cook v. Philip Morris, Inc.*, 1997 WL 667777, at *2 (N.D. Ill. Oct. 17, 1997) (holding that "[t]wo months and three weeks is hardly an undue delay, especially where no significant activity has occurred in the action.").

### C. Prejudice to Destiny

At this stage of the case, Destiny believes that CIGNA is an essential defendant. Defendant contends that CIGNA is not needed because Destiny can obtain all the relief it seeks from CGLIC. Given that Destiny acted promptly in seeking to add CIGNA once it received the pertinent discovery, that CGLIC delayed in producing the pertinent discovery, and that denying Destiny's motion could require Destiny to proceed against CIGNA in separate litigation, the Court finds that denying the motion could prejudice Destiny.

### D. Additional Equities

The Court recognizes that Defendant has an interest in litigating this action in federal court. However, joining CIGNA will not unduly prejudice Defendant. Although the new allegations will require remand to the Circuit Court for Cook County, the underlying dispute in

---

[5] In its response brief, Defendant points out that for nearly ten months, Destiny refused to quantify its damages, precluding CGLIC from removing this case to federal court.

this case is based entirely on Illinois law and CGLIC has not demonstrated why a state court is not equally competent to resolve this action. Additionally, considerations of judicial economy and consistent verdicts warrant allowing Destiny to amend its complaint to include CIGNA. As previously stated, if joinder is denied, CIGNA would be required to file a second action in state court and two different courts would be evaluating the same set of facts in two separate lawsuits. Such a duplication of efforts is wasteful and could lead to contradictory results.

Despite the jurisdictional jockeying by both sides, it is early in this case and no deadlines have passed. There is a clear dispute over the extent of CIGNA's direct participation, if any, in the events giving rise to the lawsuit – specifically, whether Gray and McCarthy were holding themselves out as CIGNA or CGLIC and on who behalf they were negotiating, and whether they were trying to build a relationship between Destiny and CGLIC or Destiny and the entire CIGNA family. Destiny's allegations, which the Court must accept as true and view in the light most favorable to Plaintiff, indicate direct involvement by high-ranking CIGNA employees who, at a minimum, held themselves out as CIGNA representatives.

### E. Personal Jurisdiction

To establish personal jurisdiction over an out-of-state defendant, the exercise of personal jurisdiction must be appropriate under both the Illinois long-arm statute and the Federal Constitution. See *Dual-Temp of Ill., Inc. v. Hench Control Corp.*, 2009 WL 4674105, at *4-5 (N.D. Ill. Dec. 4, 2009). A court may assert specific jurisdiction over an out-of-state defendant when the minimum contacts standard is met and the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. See, *e.g., Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to

defend a suit there. *Burger King Corp. v. Rudziewicz,* 471 U.S. 462, 472 (1985). This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id*.

According to the allegations in the proposed amended complaint, in September 2007, CIGNA executive Richard Gray met with Destiny in Chicago for an entire day to discuss the possibility of partnership between CIGNA and Destiny. Gray and CIGNA Vice President and Treasurer, Thomas McCarthy, participated in numerous phone calls with the Chicago-based Destiny regarding the possibility of a business relationship. Richard Gray also sent communications and business proposals to Destiny in Illinois. Simply put – again resolving the conflicts regarding CIGNA's involvement in favor of Plaintiff – CIGNA came here to do business. These facts are sufficient to constitute transaction of business in Illinois under the Illinois long-arm statute. See, *e.g.*, *D.S. America (East) Inc. v. Elmendorf Grafica, Inc.*, 654 N.E.2d 472, 477 (Ill. App Ct. 1st Dist. 1995) (single meeting between an agent of a nonresident defendant and an Illinois plaintiff may suffice to constitute the transaction of business for purposes of the Illinois long-arm statute); *YCB Intern. Inc. v. UCF Trading Co.*, 2010 WL 2928069, at *2 (N.D. Ill. July 21, 2010). By engaging in such activities, CIGNA should have reasonably anticipated being subject to suit in Illinois arising out of its business relations with an Illinois company, and CIGNA's purposeful contacts with Illinois establish the constitutionally-

mandated connection with the forum state. "[I]t is not unreasonable to ask a defendant who enters a forum state to further a business transaction to return to that state to litigate matters directly related to the defendant's business dealings." See *Prevue Pet Prods. v. Targeted Media for Medicine, Inc.*, 2003 WL 22247182, at *4 (N.D. Ill. Sept. 26, 2003). Accordingly, CIGNA's argument that it is not subject to personal jurisdiction in Illinois is unconvincing.

## III. Conclusion

For the reasons set forth, the Court grants Destiny's motion for leave to file an amended complaint [8]. As previously noted, the Court has properly considered the allegations in the briefs (as far as they are consistent with the allegations in the proposed complaint) (see *Evans v. U.S. Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006)). However, the proposed amended complaint attached to the motion does not adequately capture the additional allegations that Destiny has set forth in its briefs. Because resolution of this motion will lead to a remand to state court after the filing of the amended complaint, the Court directs Plaintiff to file an amended complaint that incorporates the additional allegations set forth in its briefs within fourteen days of this order. Upon receipt of the amended complaint, the Court will remand the action to state court. Defendant's motion for leave to file a surreply [17] is denied, as Defendant's sixteen-page response brief thoroughly addresses all of the issues that the Court considered in ruling on this motion.

Dated: September 22, 2010

_____
Robert M. Dow, Jr.
United States District Judge

15